**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JEFFERY CARTER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 14 C 244 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM OPINION AND ORDER**

Jeffery Carter, along with a co-defendant, Kentrell Willis, was convicted of carjacking in violation of 18 U.S.C. § 2119, using and carrying a firearm during the carjacking in violation of 18 U.S.C. § 924(c)(1)(A), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Carter was sentenced to a term of 264 months' imprisonment. The conviction and sentence were affirmed on appeal, United States v. Carter, 695 F.3d 690 (7th Cir. 2012), and certiorari was denied, Carter v. United States, 133 S. Ct. 913. Carter has now filed a petition under 18 U.S.C. § 2255, seeking to vacate his conviction and sentence. He has also moved for an evidentiary hearing.

Before discussing the petition, we will provide a brief summary of the relevant facts.

At approximately 11:00 p.m. on June 23, 2009, Darrick and Geraldine Anderson were returning home from a birthday party and

parked their Ford Explorer in front of their home on South Peoria Street in Chicago. Kentrell Willis walked up to the driver's side and pointed a fully-loaded .22 caliber Ruger pistol at Darrick Anderson's head and ordered him out of the vehicle. Willis repeatedly stated to Mr. Anderson that he would kill him. Simultaneously, Jeffery Carter appeared at the passenger window and stated to Mrs. Anderson, "Do you know what time it is? It's stickup time. Get on the ground, bitch. I gotta gun." Carter led Mrs. Anderson around the rear of the vehicle to the driver's side, where Willis was holding Mr. Anderson at gunpoint. Carter took Mr. Anderson's wallet and watch and Mrs. Anderson's watch and purse. The contents of the purse included Mrs. Anderson's cell phone. Willis and Carter then drove off in the Explorer.

The Andersons then entered their house. Their daughter knew that her mother's cell phone had a "Family Locator" feature, which made it possible to track the location of the cell phone by GPS. The police were called, and the cell phone was tracked for the next hour or so.

At approximately 11:30 p.m., Willis and Carter abandoned the Andersons' Explorer in a parking lot at the corner of 55th Street and South Ashland Avenue. Carter called his uncle, David Chew, and asked him to pick him and Willis up at the parking lot. Shortly thereafter, Mr. Chew did pick up Carter and Willis in a minivan occupied by Carter's other uncle, Milton Latham, and a cousin,

Joseph Billups. While riding in the minivan, Carter used Mrs. Anderson's cell phone to call his parole officer and his mother.

At approximately midnight, while riding in the uncle's minivan, Willis and Carter saw a man walking up to his home on a side street near 63rd Street. They got out of the van and approached the man, Jose Garcia, who started to run. They chased him down, and Carter held a handgun to Garcia's chest while he and Willis took Garcia's wallet and phone. Willis and Carter returned to the van; Garcia entered his home and reported the robbery to the police.

At about 12:12 a.m. on June 24, David Chew's van pulled into a gas station near 85th Street and Cicero Avenue, and all of the occupants got out. Carter attempted to give the handgun to Milton Latham, but Latham refused to take it and placed it back inside Chew's van. Police officers patrolling the area noticed Willis and thought that he fit the description of one of the carjackers. The officers detained all five individuals for questioning and noticed the firearm inside the van, visible through the window. It was a loaded Ruger .22 caliber six-shot pistol.

Carter and Willis were arrested. Carter had been seen dropping something into a trash can at the rear of Chew's van as the police arrived. It was recovered and found to be the wallet that Carter and Willis had stolen from Jose Garcia.

Carter gave a full confession, describing the Anderson carjacking and the Garcia robbery and implicating Willis as well as himself.[1]

**CARTER'S GROUNDS FOR RELIEF**

Carter claims that his attorney failed to provide him with effective assistance and that this ineffective assistance resulted in his conviction and unlawful sentence, in violation of the Sixth Amendment. In order to make out a claim of ineffective assistance, the petitioner must show both that "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).

**Ground One**

Carter's first ground is that counsel was ineffective "for failure to analyze fingerprints on firearm to show I never touched it." (Pet. at 4.) This is a choice of trial strategy that is well within the range of effective representation. First of all, the absence of fingerprints on the firearm would not show that Carter had never touched it. The hard surfaces of a firearm rarely show fingerprints, as an expert government rebuttal witness would

---

[1] For this reason, we tried the case with separate juries, and Willis's jury did not hear Carter's confession.
Willis has filed his own § 2255 petition, which is separately docketed. We will be ruling on that petition at the same time as this ruling on Carter's petition.

undoubtedly have testified had defense counsel offered testimony that the firearm did not bear Carter's fingerprints. Secondly, what if the weapon did bear Carter's prints? That was a risk defense counsel understandably avoided, since he knew that Carter had given a complete confession to the carjacking and the additional robbery in which the weapon was used.

Carter's first ground is rejected.

### Ground Two

Ground Two is that

> [t]he identification procedure was suggestive and that such suggestiveness was unnecessary, and the identification in open court was unreliable and violate my due process.

(Pet. at 5.) Carter argues that the police officer who conducted a lineup for Mr. and Mrs. Anderson was unduly suggestive in that he told them that the people who robbed them were "in custody." However, Mr. Anderson identified only Willis, not Carter, and Mrs. Anderson identified neither defendant at the time of the lineup. At trial, the Andersons disputed what the officer stated in his report, and they were extensively cross-examined by defense counsel concerning what had happened at the lineup. Defense counsel also called the officer to testify what the Andersons had told him during the lineup. In short, the matter was thoroughly explored at trial and presented a credibility issue for the jury to decide. As the government points out in its response to the petition, the reliability of eyewitness identification was probably only of

secondary importance to the jury. They had Carter's confession that he participated in the carjacking of the Andersons and his use of her cell phone to call his mother and his probation officer. As for the failure of Jose Garcia to identify Carter, the wallet that was stolen from Garcia was in Carter's possession at the gas station where the defendants were arrested. He was seen dropping it into a trash can at the rear of Chew's van as the officers arrived.

Carter complains of defense counsel's failure to raise these alleged problems about eyewitness identification on appeal. In response to the question on the petition form that asks "If you did not raise this issue in your direct appeal, explain why," Carter replied, "Because my lawyer didn't do it saying it was a waste of time." The lawyer was correct. Identification issues would have had no prospect of success on appeal.

Ground Two of the petition is rejected.

### Ground Three

Ground Three is that

> I was never charged with Mr. Garcia's robbery and the government stated that they would not use Mr. Garcia's testimony at trial yet defense counsel allowed the government to use Mr. Garcia at trial anyway.

(Pet. at 6-7.) The government makes no response to this claim that Carter's counsel was assured that the government would not offer evidence of the Garcia robbery. The court has no recollection of any discussion of such an assurance. What we recall is that the

government moved in limine prior to trial to admit the Garcia evidence, and, after extended argument, we ruled in the government's favor.

Even assuming that government counsel had at some previous stage of the case indicated that Garcia would not be called, and then reneged on the assurance, we fail to see how any constitutional right of Carter would have been violated. His claim is that defense counsel was ineffective in that he "allowed the government to use Mr. Garcia at trial anyway," but it was the court that allowed the testimony. Had defense counsel objected on the basis that he had been assured the evidence would not be used, we would have inquired as to whether the defendant had been unfairly prejudiced by the government's change of position. Carter does not suggest any way in which the Garcia testimony caused unfair prejudice. It was clearly relevant evidence, and we would have admitted it over the objection Carter claims should have been made.

We reject Ground Three of the petition.

### **Ground Four**

Ground Four is that counsel was ineffective "for not arguing minor role in the offense." (Pet. at 8.) Had Carter been found to be a minor participant, he would have been entitled to a two-level decrease in his offense level. U.S. Sentencing Guidelines Manual §3B1.2. Carter argues that he was less culpable than his co-defendant Willis, but "the fact that other members of the

conspiracy were more involved does not entitle a defendant to a reduction in the offense level." United States v. Gonzalez, 534 F.3d 613, 616 (7th Cir. 2008). Carter participated fully with Willis in the intimidation and robbery of the Andersons. As the Seventh Circuit observed, Carter "actively assist[ed] Willis in the criminal endeavor." Carter, 695 F.3d at 698. Had defense counsel made a minor-participant argument at sentencing, we would have rejected it. Counsel was not ineffective for failing to make the argument, and Carter has not suffered any prejudice as a result of his not making it.

Ground Four is rejected.

## Ground Five

In Ground Five, Carter alleges that his counsel was ineffective for

> [f]alsely advis[ing] me that the government would not use Mr. Gracia [sic] as a witness against me, because we won the motion to have him not to testify.

(Pet. at 8A.) This is a slight variation of Ground Four, because Carter now asserts that counsel told him that "we won the motion to have him not to testify." Even if counsel had made this misstatement, there was no unfair prejudice to Carter in a constitutional sense. We reject Ground Five for the same reason we reject Ground Four.

## **Ground Six**

Ground Six asserts that defense counsel was ineffective because Carter told him

> [t]hat the letter that is being shown (at trial) is a letter I provided to my former defense counsel Miangel Cody and that is violating my attorney client privilege and he did nothing about it.

(Pet. at 8B.) We have no recollection of any letter of Carter being admitted, or even discussed, at trial. In its response to the petition, current government counsel states that his review of the trial record does not contain any reference to a letter by Carter, and as a result, "the government is unable to respond directly to this allegation." (Gov't's Resp. at 16.) In his reply memorandum, Carter does not provide any further information about the letter. We have no idea what he claims the letter said or how he was prejudiced by it.

We reject Ground Six for insufficient presentation.

## **Ground Seven**

Ground Seven is another ineffective representation claim:

> I told my defense attorney that detective Haleem statements in regards to the Anderson's that the men who robbed them were in custody and he should have moved for a mistrial because those statements was bad faith since I was not pick out of line-up at the police station shortly after the robbery.

(Pet. at 8C.) Detective Haleem's suggestive statement to the Andersons that the men who robbed them were "in custody" was not a ground for a mistrial, and, had the motion been made, it would have

been denied.  Ground Seven is a variation of Ground Two, and we reject it for the same reason we rejected Ground Two.

### **CONCLUSION**

The petitioner has failed to show that his attorney was constitutionally ineffective in his representation of him. Accordingly, the motion to vacate the conviction and sentence pursuant to 28 U.S.C. § 2255 is denied.

There are no factual issues that require resolution; therefore, the petitioner's motion for an evidentiary hearing is denied.

Because the petitioner has not made a substantial showing of the denial of a constitutional right, we deny a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.


DATE:		July 23, 2014


ENTER:		_____
			John F. Grady, United States District Judge